UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GINA VERDEZA, Individually and as
The Personal Representative of the Estate of
Jonathan Carvajal, Deceased,

    Plaintiff,                                                      CASE NO: 3:23-cv-564-TJC-MCR

v.

TESLA MOTORS, INC. and
TESLA MOTORS FL, INC.

    Defendants.

_____/

## TESLA MOTORS, INC.'S MOTION
## TO DISMISS AND COMPEL ARBITRATION

Defendant, Tesla Motors, Inc. (n/k/a Tesla, Inc.)[1] ("Tesla"), pursuant to Federal Rule of Civil Procedure 12(b)(1), 9 U.S.C. §§ 3 and 4 of the Federal Arbitration Act, and other applicable authority, and moves this Court to dismiss the claims asserted against it by Plaintiff in this matter and to compel Plaintiff to pursue her claim against Tesla, if at all, in arbitration.

---

[1] Tesla, Inc. is also known as Tesla Florida, Inc. (Decl. of Emmanuelle Stewart, Doc. 1-3, ¶ 4).

1

# INTRODUCTION

When the decedent purchased the Tesla Model Y that is the subject of this lawsuit, he agreed that any dispute with Tesla concerning his vehicle would, if Tesla elected, "be resolved by neutral, binding arbitration and not by court action." Since his beneficiaries are bound by the agreement the decedent executed, and since Tesla elects arbitration, this case must be arbitrated pursuant to the terms of the parties' agreement. Thus, Tesla respectfully requests that this Court dismiss this matter so that it can be resolved through arbitration.

# FACTUAL AND PROCEDURAL BACKGROUND

The decedent, Jonathan Carvajal, purchased a 2022 Tesla Model Y from Tesla. (Compl. ¶ 14). At the time of purchase, he executed, by electronic signature, a Retail Installment Contract for the purchase of the vehicle. (Doc. 1-3, ¶ 5). The Retail Installment Contract contained an arbitration provision, which provided that any claim or dispute between Tesla and the decedent, including tort claims and those based on the condition of the vehicle, were subject to binding arbitration at the election of either party. (Doc. 1-3, Ex. A). Specifically, the provision provides in part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any

such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Plaintiff alleges that on September 17, 2022, the decedent died after the Tesla Model Y's "crash avoidance, crash mitigation, and auto pilot features and technologies unexpectedly malfunctioned," and the vehicle went through a stop sign and crashed into a tree. (Compl. ¶¶ 19-20). Plaintiff claims that "[a]s sold to Mr. Carvajal, the Subject Tesla Vehicle was equipped with several crash avoidance . . . features and technologies designed to automatically drive the Subject Tesla Vehicle, prevent collisions, and assist drivers in operating their Tesla vehicles," and that had these features "functioned as designed, the collision and Mr. Carvajal's death would not have occurred." (*Id*. ¶¶ 16, 21).

Plaintiff's Estate filed suit on March 24, 2023 and Tesla removed to this Court. Tesla elects to invoke the arbitration agreement and moves to compel that this matter be litigated in arbitration pursuant the terms of the parties' agreement.

## ARGUMENT

### I. Legal Standard

Section two of the Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements according to their terms "save upon such grounds as exist under law or equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA thereby places arbitration agreements on equal footing with other contracts,

3

and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (citations omitted).

Sections three and four of the FAA establish procedures by which federal courts implement section two. *Id*. at 68. Under section three, a party may move to stay or dismiss the proceedings "upon any issues referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. Under section four, a party aggrieved by the refusal of another to arbitrate under a written agreement may petition a court for an order directing that such arbitration proceed in the agreed upon manner. 9 U.S.C. § 4.

**II.   This Court must dismiss the action and compel arbitration.**

Under both federal statutory provisions and Florida's arbitration code, courts must consider three factors on a motion to compel arbitration: "(1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." *Lowe v. Charter Commc'n Holdings LLC*, Case No: 6-19-cv-1621, 2019 WL 13248799, at *2 (M.D. Fla. Nov. 5); *Laizure v. Avante at Leesburg, Inc.*, 109 So.3d 752, 757 (2013). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014) (quotation marks omitted), cert. denied, 135 S. Ct. 144, 190 L.Ed.2d 231 (2014); *see also Jackson v.*

4

*Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013). Here all of the requirements to compel arbitration are met.

First, there is a valid written agreement to arbitrate. As established in Emmanuelle Stewart's Declaration, (Doc. 1-3), the decedent executed by electronic signature the Retail Installment Contract that included an arbitration provision. Fla. Stat. § 668.004 (providing that an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature). The fact that the contract at issue was executed by the decedent and not Plaintiff herself, is irrelevant. A decedent's execution of an arbitration agreement "binds the decedent's estate and statutory heirs in a subsequent wrongful death action arising from an alleged tort within the scope of an otherwise valid arbitration agreement." *Laizure,* 109 So.3d at 762.

Second, there is an arbitrable issue because Plaintiff's claims fall within the scope of the agreement. For starters, "when ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Terminix Int'l Co. v. Palmer Ranch Ltd.*, 432 F.3d 1327, 1332 (11th Cir. 2005). Here, the Retail Installment Contract executed by the decedent provided that "the interpretation and scope of [the] Arbitration Provision, and the arbitrability of the claim or dispute," should be resolved by neutral arbitration.

5

(Doc. 1-3, Ex. A). Thus, as a preliminary matter, the question of arbitrability of Plaintiff's claims should be decided in arbitration.

Regardless of the provision regarding the question of arbitrability, the claims at issue are clearly arbitrable. Plaintiff's product liability wrongful death claims are based on allegations that the Tesla Model Y was defective in design or manufacture and was "unmerchantable, unsuitable, unfit, and unreasonably dangerous." (Compl. ¶ 43). Specifically, Plaintiff alleges that "[a]s sold to Mr. Carvajal, the [Model Y] was equipped with several crash avoidance, crash mitigation, and autopilot features" and that those features "unexpectedly malfunctioned" causing the accident. (Compl. ¶¶ 16-19). The arbitration agreement explicitly includes claims based on "contract, tort, statute or otherwise" concerning "the purchase *or condition*" of the vehicle. (Doc. 1-3, Ex. A). All of Plaintiff's claims fall within the scope of the provision since they all concern the "condition" of the Model Y and are all based in tort (strict liability, negligence) or contract (breach of warranty)—although given the "otherwise" language they could have been based on another theory. *See Laizure*, 109 So.3d at 758 (finding that the claims were arbitrable where the contract specifically contemplated tort claims); *Greene v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1299, 1306 (N.D. Fla. 2021) (granting motion to compel arbitration in product liability personal injury

6

claim as to the father of the injured child, since the father is the party who signed the arbitration agreement).

Third, Tesla has not waived its right to arbitration. "In determining whether a party has waived its right to arbitration, courts look to federal law, not state law. *Leitzke v. JPMorgan Chase Bank, N.A.*, 2020 WL 8669703, *3 (M.D. Fla. Jan. 27, 2020). "A party claiming waiver must show that: (1) the party seeking arbitration substantially participated in the litigation to a point inconsistent with an intent to arbitrate; and (2) that this participation resulted in prejudice to the opposing party." *Id*. This is Tesla's first responsive filing to Plaintiff's Complaint. Otherwise, the only filings Tesla has made are its Notice of Removal and required Certificate of Interested Parties. Tesla has not conducted any discovery or otherwise participated in this litigation.

## CONCLUSION

WHEREFORE, Defendant Tesla Motors, Inc. (n/k/a Tesla, Inc.) respectfully moves this Court for an Order dismissing this litigation against it and compelling arbitration of all of Plaintiff's claims against Tesla Motors, Inc.

## Local Rule 3.01(g) Certification

Counsel for Tesla Motors FL, Inc. attempted to confer with counsel for Plaintiff by phone several times and sent two email correspondence to counsel for Plaintiff regarding the relief sought herein and has not received a response.

Pursuant to Local Rule 3.01(g)(3), the undersigned will try diligently for three days to contact the opposing party and will supplement the motion with a statement certifying whether the parties have resolved all or part of the motion.

Dated:  May 18, 2023                              Respectfully submitted,

/s/ *Nina C. Welch*
**NINA C. WELCH**
Fla. Bar No. 118900
**NELSON MULLINS**
One Financial Plaza
100 S.E. 3rd Avenue, Suite 2700
Fort Lauderdale, FL 33394
Telephone: (954) 764-7060
Fax: (954) 713-0969
nina.welch@nelsonmullins.com
herold.labissiere@nelsonmullins.com
***Counsel for Tesla Motors, Inc. a/k/a Tesla, Inc. and Tesla Motors FL, Inc.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 18, 2023 the foregoing document was filed with the Clerk of the Court using CM/ECF. I further certify that the foregoing document was served on counsel whom have provided designated e-mail addresses for service via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Nina C. Welch*
Nina C. Welch

8